HONORABLE TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JACE HOAG, on her own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PACIFICA BEAUTY, LLC,<br><br>Defendant. | Case No. 3:26-cv-05246-TMC<br><br>PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Jace Hoag, on her own behalf and on behalf of others similarly situated, on information and belief except to her own experiences and matters of public record, complains of Defendant Pacifica Beauty, LLC, ("Pacifica") as follows:

## I. INTRODUCTION

1. In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code of Washington (RCW).

2. Among other things, CEMA prohibits transmitting a commercial email to a Washington resident's email address that "[c]ontains false or misleading information in the subject


STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801

line." RCW 19.190.020(1)(b).

3. Defendant Pacifica Beauty, LLC, ("Pacifica") does just what CEMA prohibits.

4. Pacifica bombards Washington consumers, including Plaintiff, with commercial emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets.

5. This false urgency wastes consumers' time by enticing them to engage with Pacifica's marketing efforts for fear of missing out and chokes consumers' email inboxes with repeated false notifications that the time to act—*i.e.*, *purchase*—is short.

6. And through this deceptive time-sensitivity, Pacifica falsely narrows the field—steering consumers away from shopping for better deals—to its own products that must be purchased *now*.

7. Plaintiff challenges Pacifica's harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.

## II. JURISDICTION AND VENUE

8. On March 12, 2026, Defendant invoked this Court's jurisdiction under 28 U.S.C. §§ 1332, 1441, and 1446. *See* D.E. 1 (notice of removal).

9. Venue is proper in the Western District of Washington under 28 U.S.C. § 1441 because this district and division embrace the place from which Defendant removed this action, Thurston County Superior Court (Case No. 26-2-00983-34).

## III. PARTIES

10. Plaintiff Jace Hoag is a resident of Thurston County, Washington.



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801

11. Defendant Pacifica Beauty, LLC, is a limited liability company formed under the laws of Delaware with its principal place of business at 1090 Eugenia Place, Suite 200, Carpinteria, CA 93013.

## IV. FACTUAL ALLEGATIONS

### A. CEMA protects Washington consumers from deceptive spam emails.

12. The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

13. In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

14. In the nearly three decades since, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

15. And the problems are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

16. In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

17. In 2012, one study estimated that Americans bear "costs of almost $20 billion annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

18. Even when bulk commercial email marketers are operating under color of consumer consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice"



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801

approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

19. Consumers therefore routinely "consent" to receive flurries of commercial emails which they did not meaningfully request and in which they have no genuine interest.

20. This includes emails sent to consumers from businesses with which they have no prior relationship—by virtue of commercial data brokers and commercial data sharing agreements.

21. Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address for everything from opening a bank account to getting your dog's nails trimmed, and … [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox: Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe Services Don't Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

22. The Legislature presciently intended CEMA to "provide some immediate relief" for these problems by prohibiting among other things commercial emails that "contain untrue or misleading information in the subject line." Laws of 1998, ch. 149, § 1.

23. CEMA thereby protects Washington consumers against the "harms resulting from deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).

24. CEMA's "truthfulness requirements" increase the costs of sending deceptive commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

25. CEMA's "truthfulness requirements" thereby advance the statute's aim of protecting consumers "from the problems associated with commercial bulk e-mail" while



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801

facilitating commerce "by eliminating fraud and deception." *Id.*

26. CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language, CEMA unambiguously prohibits "sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025).

27. CEMA's protections do not depend on whether any email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

28. The statute's only concern is to suppress false or misleading information in the subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

**B. The subject lines of Pacifica's marketing emails make false time scarcity claims.**

29. One common way online marketers "manipulate consumer choice by inducing false beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

30. The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patterns to Light*, *supra* para. 29, at 22.



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801

31. “False or misleading scarcity claims can change the behaviour of consumers.” *Online Choice Architecture*, *supra* para. 29, at 27.

32. Representations about the timing and duration of sales, discounts, and other special offers are fundamentally representations about prices, and such representations matter to ordinary consumers. *See, e.g.*, Huiliang Zhao *et al.*, *Impact of Pricing and Product Information on Consumer Buying Behavior with Customer Satisfaction in a Mediating Role*, 12 Frontiers in Psychology 720151 (2021), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8710754/pdf/fpsyg-12-720151.pdf/.

33. False scarcity claims are psychologically effective. As “considerable evidence” suggests, “consumers react to scarcity and divert their attention to information where they might miss opportunities.” *Online Choice Architecture*, *supra* para. 29, at 26.

34. Invoking this time pressure achieves a seller’s aim to narrow the field of competitive products and deals, by “induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit.” *Id.*

35. Under time pressure, “consumers might take up an offer to minimise the uncertainty of passing it up.” *Id.*

36. False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller’s benefit*.

37. Indeed, one 2019 study found that “customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited.” *Id.* at 27.

38. False time scarcity claims also harm market competition. Consumers learn to ignore scarcity claims, “meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information.” *Id.*



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801

39. False time scarcity claims are a staple of Pacifica's marketing emails.

40. Pacifica Beauty is a skincare brand specializing in vegan makeup and beauty products. The company's products are available through other retailers as well as on Pacifica's website, www.pacificabeauty.com.

41. To advertise its products and encourage purchases from www.pacificabeauty.com, Pacifica sends spam emails to consumers.

42. **Urgent Spam Emails.** Unfortunately for those recipients, Pacifica regularly titles its emails with urgent subject headings that do not reflect the true availability of the advertised deal. This strategy is demonstrated in the marketing emails discussed below.

43. Pacifica has tailored its approach to fit a number of offers, including promotion extensions. In these examples, Pacifica sends consumers marketing emails to advertise an offer, promotion or sale. Then, it uses the subject lines of follow-up emails to present the promotional as a scarce or time-limited opportunity. This strategy commands consumers' attention and pressures them to purchase from Defendant's website and retail locations. Finally, once the originally advertised "deadline" has passed, Pacifica knowingly extends the promotion to a new end date.

44. This misleading strategy allows Pacifica to maximize sales during both the initial promotion, as well as the subsequent extension. While Pacifica may present these extensions as though they are a favor or unexpected blessing to consumers, they are anything but. By deploying false time pressure with surprise extensions—which are only disclosed once the original promotion has ended—Pacifica compels consumers to purchase quickly while withholding terms that consumers need so that they can make informed buying decisions. A 2022 promotion provides an apt example of this strategy at work.

45. First, Pacifica sends consumers marketing emails advertising a new promotion. For



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801

instance, on March 17, 2022, it transmitted an email with the subject line: "20% Off Sitewide Starts Now!" The email included a code that recipients could use to obtain the advertised discount on Defendant's website. Small print at the bottom of the email provided the deadline for the promotion: "Offer valid until 03/20/22."

46. For the next step in its scheme, Pacifica uses the subject lines of its follow-up emails to assert false time pressure on recipients. Such headlines urge consumers to purchase from Pacifica's website by warning them that the offer is coming to an end.

47. Pacifica did so, regarding the sitewide sale, on March 20, 2022, in an email titled: "Final Day for 20% Off[.]" A large banner appearing inside the email reiterated that it was the "FINAL DAY" for the sitewide sale while small text at the bottom of the email repeated the deadline: "Offer valid until 03/20/22."

48. Despite the unambiguous end date communicated to consumers, the sitewide sale did not conclude on March 20, 2022, as advertised. Instead of providing consumers with accurate terms, the defendant-retailer chose to keep them in the dark regarding the sale's end date.

49. In the final stage of its scheme, Pacifica extends the life of the promotion, proving the falsity of the deadline it first advertised. For the sitewide 20% off sale, Pacifica revealed that the promotion was still active the very next day, March 21, 2022. An email sent on that date carried the subject line, "20% Off Extended!" and revealed the true deadline within the email's fine print: "Offer extended until 11:59 PM PST 03/21/22."

50. The March 21 email confirmed the misleading nature of Pacifica's March 20, 2022, subject line. The company's sitewide sale didn't end on March 20. Instead, Pacifica advertised the same event the following day. Consumers in receipt of the March 20 email were not at risk of missing the sale because Pacifica did not end the promotion on March 20, as advertised. The false



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801

deadline of the sitewide sale is simply one element of Defendant's cohesive marketing strategy meant to compel consumers to purchase its merchandise. It is part of a plan to gin up consumer urgency with fake information to get consumers to buy *now* with factual details Pacifica knows are false.

51. Shortly thereafter, Pacifica redeployed its ruse for another promotion offering 30% off suncare products. Just as it had done with the sitewide sale, Pacifica used a false deadline with fake information in the subject headings to conceal the true availability of the advertised discount.

52. On May 19, 2022, Pacifica transmitted an email with the subject line: "Suncare Savings Ends Tonight!" Inside the email, Pacifica described the promotion as a "24 Hour Flash Sale" and made clear that the opportunity was "ENDING SOON[.]" Small print at the bottom of the email also specified the end of the promotion: "Flash sale ends at 11:59 p.m. PST."

53. To the detriment of consumers, the May 19, 2022, subject line communicated a false end date. The suncare sale did not end on May 19.

54. The promotion was still active the next day, on May 20, 2022. The email was titled, "One More Day! 30% Off Suncare[,]" and demonstrated the falsity of the May 19, 2022, subject line. Within the email, Pacifica confirmed that the sale was extended beyond the deadline that it had originally communicated to consumers.

55. By stuffing consumer inboxes with such misinformation, Pacifica ensures that email recipients lack the accurate details needed to make educated buying decisions.

56. Before the month was over, Pacifica returned to consumers' inboxes to deliver more misleading marketing emails.

57. On May 31, 2022, it sent consumers an email with the subject heading: "Last Day for 20% OFF[.]" The body of the email warned that it was the "LAST DAY" for a 20% off sitewide



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801

sale and provided a code that consumers could use to access the advertised discount. At the bottom of the email, small print provided the specific minute at which the opportunity would end: "5/31/22 at 11:59 P.M. PST[.]"

58. True to its typical pattern, the deadline which Pacifica communicated to consumers was a false one.

59. On June 1, 2022, one day after the promotion would supposedly end, Pacifica transmitted an email titled: "Get An Extra Day to Save 20%[.]" The June 1 email confirmed that the "Last Day" warning contained within the May 31, 2022, subject line was a misleading time pressure claim designed to deceive consumers rather than a reliable fact about the opportunity to obtain a sitewide discount.

60. Later in the year, Pacifica advertised another 20% off sitewide sale. Again, the deadline first communicated to consumers was a false one.

61. On October 23, 2022, Pacifica sent an email with the subject heading: "LAST CHANCE! 20% Off Sitewide[.]" Inside, text at the top of the email warned that the sale, "Ends TONIGHT!" At the bottom of the email, Pacifica emphasized the deadline for a third time: "Sale ends 10/23/22 at 11:59 p.m[.] PST."

62. The sale, however, was extended, confirming that the October 23, 2022, subject line was false.

63. On October 24, 2022, Pacifica sent consumers an email announcing the extension within the email's subject line: "SURPRISE! 💥 One Last Day to Save[.]"

64. Like the other installments in Pacifica's scheme, the October 23, 2022, subject line was part of a coordinated marketing strategy to deceive consumers with false information about the duration and availability of a promotion.



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801

65. Pacifica transmitted false and misleading subject lines in 2023 as well. A promotion from May provides an example.

66. On May 28, 2023, Pacifica sent an email with the subject heading: "🌞 🌵 20% off ends tomorrow!" The email concerned another 20% off sitewide sale and provided a code that consumers could enter on Pacifica's website to access the advertised discount. The body of the email also made clear that the sale "ENDS TOMORROW" in large text near the top and then again in small print at the bottom of the message: "Ends 5/29/23."

67. Pacifica continued to layer false time pressure on consumers the following day, on May 29, 2023. On that date, it sent an email titled: "🌴 ✨ Last day to save 20%[.]" Again, Pacifica provided a specific end date of "5/29/23" in the email's fine print while large text at the top of the email represented that the sale was in its "LAST DAY."

68. However, both subject lines communicated a false deadline.

69. On May 30, 2023, Pacifica sent an email with the subject line: "🔥 Beat the heat with an extra day of savings[.]" The message confirmed that the sale did not end on the date Pacifica unambiguously communicated in its prior emails.

70. Instead of providing consumers with reliable facts about the end of the sitewide sale, Pacifica used its May 28 and May 29 subject lines to leverage false time pressure against consumers to compel them to purchase Pacifica products.

71. A few months later, Pacifica deployed deceptive subject lines during another 20% off sitewide sale.

72. On August 28, 2023, it sent consumers an email with the subject heading: "🌞LAST DAY! SAVE 20%🌞[.]" Small text at the bottom of the email stated that the offer "[e]nds 8/28 at 11:59 PM PST[.]"



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801

73. However, the August 28, 2023, subject line was false. August 28 was not the last day for the sale.

74. The promotion was available the next day, August 29, 2023, as confirmed in an email titled: "🎉 SURPRISE! SURPRISE!" The body of the email presented the change as a "SURPRISE EXTENSION!" and revealed the promotion's true deadline: "Ends 8/29 at 11:59 PM PST[.]"

75. Pacifica maintained its deceptive marketing strategy in 2024.

76. For example, on March 24, 2024, Pacifica sent consumers a mass email with the subject line, "🧡Last Day! 20% OFF SITEWIDE[.]" Fine text at the bottom of the email also reiterated that the "Offer ends on 3/24/24 at 11:59 PST" while text at the top of the email announced that the sale was in its "LAST DAY!"

77. The subject line of the March 24 email was false or misleading, as subsequent email illustrates. Pacifica always planned to and did extend the 20% discount through the following day.

78. On March 25, 2024, Pacifica sent consumers a mass email with the subject line, "🎉 Surprise! 20% OFF SITEWIDE EXTENDED[,]" extending the 20 percent discount through the rest of that day and demonstrating the falsity of the March 24, 2024, subject line.

79. By strategically deploying false time pressure tactics against consumers, Pacifica was thus able to announce the "end" of the sale *twice*—once, falsely.

80. Just months later, on May 26, 2024, Pacifica deployed similar anti-consumer tactics when it sent consumers a mass email with the subject line: "ENDS TOMORROW: Free 5-Piece Summer Travel Kit[.]" According to small print at the bottom of the email, the "Free" travel kit was available for orders totaling over $40.

81. The following day, May 27, 2024, Pacifica followed up with another email



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801

emphasizing the impending end of the "free" travel kit promotion. The message was titled: "LAST CHANCE: Free 5-Piece Summer Travel Kit[.]"

82. Then, on May 28, 2024, Pacifica sent an email proving that the prior subject lines contained false representations concerning the duration of the sale. The message carried the subject heading, "Extended Today Only – FREE 5-Piece Summer Travel Kit[.]"

83. The subject lines of the May 26 and May 27 emails were false or misleading, as the subsequent email on May 28, 2024, illustrates. Consumers in receipt of the earlier emails were not at risk of missing the offer because Pacifica did not end the promotion on May 27, as advertised. Pacifica always planned to and did extend the "free" summer travel kit offer through the following day.

84. Pacifica continued to mount false time pressure campaigns throughout 2025.

85. Pacifica deployed this strategy again, on April 13, 2025, marketing a sale with time pressures communicated in an email's subject line: "⏰FINAL HOURS! 50% OFF Outlet Store ENDS Today!" The clock emoji heightens the urgency conveyed in the subject heading of the email.

86. Unfortunately for consumers, the subject line of the April 13 email was false or misleading. As a subsequent email illustrates, Pacifica always planned to and did extend the sale through the following day, and again the following week.

87. On April 14, Pacifica sent consumers a mass email with the subject line, "yay! 50% off outlet collection extended! Plus 20% off sitewide!" The email announced an extension of the discount through the end of that day.

88. Similarly, on July 6, 2025, Pacifica sent consumers a mass email with the subject line, "last chance to save! friends + fam deal ends soon[.]" Inside, the email provided the specifics



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801

of the "Buy More, Save More" promotion where consumers' discount rate increased according to their total spend amount.

89. However, the subject line of the July 6 email was false or misleading. Pacifica always planned to and did extend this sale through the following day.

90. The July 6 email was followed by another Pacifica sent the very next day, on July 7, 2025, with the subject line, "sale extended! More time to buy more, save more[.]"

91. Thus, the July 7, 2025, email confirmed the falsity of the July 6 subject line.

92. Again, on November 30, 2025, Pacifica sent a mass email to consumers with the subject line, "Last Chance to Glow Up: 35% OFF SITEWIDE Ends Soon," indicating that consumers would miss out if they did not act quickly—as confirmed by the body of the email, which stated "Stellar deals disappear at **MIDNIGHT**[.]"

93. The subject line of the November 30 email was false or misleading, as a subsequent email confirmed. Pacifica always planned to and did extend the 35% Off Sitewide promotion just two days later.

94. Proof arrived in consumers' inboxes on December 2, 2025. On that date, Pacifica sent another mass email with the subject line, "✨ giving tuesday: SITEWIDE 35% OFF extended[.]" Clearly, November 30, 2025, was not consumers' "last chance" to obtain the discount pricing, despite the misleading claim made in the November 30 subject line.

95. As the subject lines of these examples of Pacifica's marketing emails demonstrate, Pacifica is engaged in a scheme where it pressures consumers to purchase products from its website by falsely representing the limited availability of its offers.

**C. Pacifica knows when it sends emails to Washington residents.**

96. A sophisticated commercial enterprise, like Pacifica, which is engaged in persistent



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801

marketing through mass email campaigns across the United States, has several ways of knowing where the recipients of its marketing emails are located. The means it employs are peculiarly with its knowledge.

97. First, the sheer volume of Pacifica's email marketing put it on notice that Washington residents would receive its emails. Over the last two years, from 2024 through 2025, Pacifica has been blasting out marketing emails at a rate averaging nearly one email every two days.

98. Second, Pacifica may obtain location information tied to email addresses when consumers make purchases from Pacifica through digital platforms, or otherwise self-report such information to Pacifica.

99. Third, Pacifica may obtain location information tied to email addresses by tracking the IP addresses of devices used to open Pacifica's emails, which in turn can be correlated to physical location (as illustrated, for example, by the website https://whatismyipaddress.com/).

100. Specifically, Pacifica appears to use Listrak to manage its email marketing campaigns. This platform should allow Pacifica to access a list of every email address that was sent a marketing email. It should also allow Pacifica to determine who viewed the emails and who clicked on any links within them.

101. Fourth, Pacifica may obtain location information tied to email addresses by purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to databases linking email addresses to physical locations, among other identifiers.

102. Fifth, Pacifica may obtain location information tied to email addresses by using "identity resolution" services offered by companies such as LiveRamp, which can connect



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801

consumers' email addresses to their physical locations, among other identifiers.

103. Sixth, Pacifica may obtain information that the recipients of its marketing emails are Washington residents because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

104. It is thus highly probable that a seller of Pacifica's size and sophistication employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.

**D. Pacifica violated Plaintiff's right under CEMA to be free from deceptive commercial emails.**

105. Pacifica has bombarded Plaintiff with commercial emails whose subject lines contain false or misleading statements in violation of her right to be free from such annoyance and harassment under CEMA.

106. For example, Plaintiff received emails containing false or misleading subject lines sent by Pacifica in July and November 2025, as described above in Section B. These messages were sent to Plaintiff's personal email address:

107. On July 6, 2025, Plaintiff received Pacifica's "last chance to save! friends + fam deal ends soon" email described above.

108. On November 30, 2025, Plaintiff received Pacifica's "Last Chance to Glow Up: 35% OFF SITEWIDE Ends Soon" email described above.

109. The subject lines of these emails are false or misleading in violation of CEMA as described above.

110. These subject lines contained false statements of fact as to the "duration or



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801

availability of a promotion." *Brown*, 567 P.3d at 47.

## V. CLASS ALLEGATIONS

111. Plaintiff brings this action under Civil Rule 23 on behalf of the following putative class ("Class"):

> All Washington residents who, during the Class Period, received a commercial email sent by the Defendant, on behalf of the Defendant, or with the Defendant's assistance, that contained messaging in the email subject line which misrepresented the facts of a sale, deal or promotion.

112. Excluded from this definition of the Class are Defendant's officers, directors, and employees; Defendant's parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; undersigned counsel for Plaintiff; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

113. The Class Period extends from the date four years before this Class Action Complaint is filed to the date a class certification order is entered in this action.

114. Plaintiff reserves the right to amend the Class definition as discovery reveals additional emails containing false or misleading information in the subject line that Defendant sent or caused to be sent during the Class Period to email addresses held by Washington residents.

115. The Class is so numerous that joinder of all members is impracticable because the Class is estimated to minimally contain thousands of members.

116. There are questions of law or fact common to the class, including without limitation whether Defendant sent commercial emails containing false or misleading information in the subject line; whether Defendant sent such emails to email addresses it knew or had to reason to know were held by Washington residents; whether Defendant's conduct violated CEMA; whether Defendant's violation of CEMA constituted a *per se* violation of the Consumer Protection Act, RCW 19.86.020 (CPA); and whether Defendant should be enjoined from such conduct.



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801

117. Plaintiff's claims are typical of the Class's because, among other reasons, Plaintiff and Class members share the same statutory rights under CEMA and the CPA, which Defendant violated in the same way by the uniform false or misleading marketing messages it sent to all putative members.

118. Plaintiff will fairly and adequately protect the Class's interests because, among other reasons, Plaintiff shares the Class's interest in avoiding unlawful false or misleading marketing; has no interest adverse to the Class; and has retained competent counsel extensively experienced in consumer protection and class action litigation.

119. Defendant has acted on grounds generally applicable to the Class, in that, among other ways, it engaged in the uniform conduct of sending uniform commercial emails to Plaintiff and the Class, which violate CEMA and the CPA in the same way, and from which it may be enjoined as to Plaintiff and all Class members, thereby making appropriate final injunctive relief with respect to the Class as a whole.

120. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, in that, among other ways, Defendant has violated their rights under the same laws by the same conduct, and the only matters for individual determination are the number of false or misleading emails received by each Class member and that Class member's resulting damages.

121. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation and management of this action on as a class presents no special difficulties.



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801

## VI. CLAIMS TO RELIEF

**<u>First Claim to Relief</u>**

**Violation of the Commercial Electronic Mail Act, RCW 19.190.020**

122. Plaintiff incorporates and realleges paragraphs 1–110 above.

123. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

124. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

125. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

126. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents, including because Defendant knew that Plaintiff and putative members were Washington residents through "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address". RCW 19.190.020(b)(2).

127. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

128. For Defendant's violation of CEMA, Plaintiff is entitled to all available relief,



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801

including an injunction against further violations.

**<u>Second Claim to Relief</u>**

**Violation of the Consumer Protection Act, RCW 19.86.020**

129. Plaintiff incorporates and realleges paragraphs 1–110 above.

130. The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

131. A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030.

132. A violation of CEMA establishes all the elements necessary to bring a private action under the CPA. *Wright v. Lyft*, 189 Wn. 2d 718 (2017).

133. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

134. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

135. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

136. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents.

137. Defendant initiated the transmission, conspired with another to initiate the



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801

transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

138. For Defendant's violation of the CPA, Plaintiff and putative members are entitled to an injunction against further violations; the greater of Plaintiff's actual damages or liquidated damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee.

## VII. JURY DEMAND

139. Plaintiff will demand a jury trial by separate document in accordance with Local Civil Rule 38(b).

## VIII. PRAYER FOR RELIEF

Plaintiff asks that the Court:

A. Certify the proposed Class, appoint Plaintiff as Class representative, and appoint undersigned counsel as Class counsel;

B. Enter a judgment in Plaintiff's and the Class's favor permanently enjoining Defendant from the unlawful conduct alleged;

C. Enter a judgment in Plaintiff's and the Class's favor awarding actual or liquidated damages, trebled, according to proof;

D. Award Plaintiff costs of suit, including reasonable attorneys' fees; and

E. Order such further relief the Court finds appropriate.



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801

Date: May 6, 2026

*/s/ Michael C. Tackeff*
Gerard J. Stranch, IV, *pro hac vice*
Michael C. Tackeff, *pro hac vice*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com

Samuel J. Strauss, WSBA No. #46971
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel.: (872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops, *pro hac vice*
Natalie A. Lyons, *pro hac vice*
Ian R. Bensberg, *pro hac vice*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

*Attorneys for Plaintiff*

*** Applications for admission *pro hac vice* forthcoming**

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Robin E. Wechkin, WSBA No. 24746
rwechkin@sidley.com
Sidley Austin LLP
8426 316th Pl SE
Issaquah, WA 98027
Telephone: (415) 439-1799
*Attorney for Defendant Pacifica Beauty, LLC*

*/s/ Michael C. Tackeff*
Michael C. Tackeff, *pro hac vice*